**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| FOR LIFE PRODUCTS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No._____ |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| RUST-OLEUM CORPORATION, | ) |
| | ) **PRELIMINARY INJUNCTION** |
| Defendant. | ) **REQUESTED** |
| | ) |

**VERIFIED COMPLAINT FOR BREACH OF CONTRACT**

Plaintiff For Life Products, LLC (hereinafter "Plaintiff" or "FLP") files this Complaint for Breach of Contract against the Defendant Rust-Oleum Corporation (hereinafter "Defendant" or "Rust-Oleum"). Plaintiff seeks monetary damages, preliminary injunctive relief, and permanent injunctive relief due to Rust-Oleum's breach and resulting irreparable harm and alleges as follows:

**NATURE OF THIS ACTION**

1. This is an action against Rust-Oleum for breach of contract and breach of the implied covenant of good faith and fair dealing.

2. Rust-Oleum breached, and continues to breach, the non-compete provision of a trademark license agreement between Rust-Oleum and FLP for which FLP seeks injunctive relief and damages.

3. FLP also seeks a preliminary injunction[1] to enforce the non-compete provision of the license agreement and enjoin Rust-Oleum from the manufacture, distribution, promotion, offer

---

[1] FLP is filing contemporaneously with its two-count verified complaint for breach of contract a related Motion for Preliminary Injunction ("PMI"), which includes additional sworn declarations in support.

for sale, and sale of cleaning and renewal products that compete with FLP's REJUVENATE product line as set forth in the trademark license agreement.

## PARTIES

4. FLP is a multi-member limited liability company organized under the laws of Florida with its principal place of business at 2301 SW 145th Ave., Miramar, FL 33027. All members of the limited liability company are located and domiciled in Florida. FLP was formed via an August 6, 2013 Certificate and Plan of Conversion and is the successor-in-interest to For Life Products, Inc. ("FPI") which was previously organized as a Florida corporation.

5. Rust-Oleum is a corporation organized under the laws of the state of Illinois with its principal place of business at 11 East Hawthorn Parkway, Vernon Hills, Illinois 60061.

## JURISDICTION

6. This Court has diversity jurisdiction over these breach of contract claims pursuant to 28 U.S.C. § 1332 as FLP is a Florida limited liability company while Rust-Oleum is an Illinois corporation physically located in the Chicago suburb of Vernon Hills, Illinois. As previously noted, FLP's limited liability members are likewise all located and domiciled in Florida. Accordingly, diversity of citizenship exists and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. Jurisdiction is further proper under Florida's long-arm statute (specifically, Florida Statute § 48.193(7)) in that Rust-Oleum has engaged in breaching the underlying contractual requirements in the State of Florida by failing to perform certain acts required by those contractual obligations to be performed within this State. The acts and omissions giving rise to the failure to perform these acts have likewise resulted in both injury and damage to FLP within this Judicial District. The contract at issue does not have choice of law or venue provisions.

8. Rust-Oleum's due process rights are not offended by this Court's exercise of personal jurisdiction over Rust-Oleum.

9. Rust-Oleum conducts routine and systematic business within the state of Florida, including but not limited to promotion, offering for sale, selling, and distributing the competing products (as addressed in greater detail below) in breach of the disputed contractual rights within this Judicial District.

10. Rust-Oleum negotiated and entered into the underlying agreements that are the subject of this dispute within this Judicial District.

## VENUE

11. Venue is proper in this Court under 28 U.S.C. § 1391 at least because a substantial part of the events occurred in this Judicial District and Rust-Oleum is subject to the personal jurisdiction of this Court as set forth above.

## STANDING

12. FLP has standing to file this action although the controlling trademark license agreement was previously executed with FPI.[2]

## STATEMENT OF FACTS

### The Parties' Products

13. Rust-Oleum sells and distributes many household and industrial products, including paint, sealants, and coatings.

---

[2] Unless indicated otherwise, all references to "Plaintiff" or "FLP" will refer to For Life Products, LLC and For Life Products, Inc. ("FPI") collectively, as For Life Products, LLC is the converted business entity.

14. According to Rust-Oleum's website, it is a "global leader," "[k]nown worldwide for industry-leading paints and coatings." *See* https://www.rustoleum.com/pages/about-rust-oleum/Global (last viewed Dec. 9, 2019).

15. FLP sells and distributes a wide array of household and commercial cleaning, restoration and surface care products under its "REJUVENATE" brand, including floor and furniture cleaners, surface care and restoration products, and corresponding accessories.

16. FLP's REJUVENATE product line includes proprietary cleaning and renewal products specially formulated to clean and repair flooring and surface materials such as hardwood floors, carpet, vinyl flooring, grout, marble, stone, slate, laminate, tile, terracotta, and terrazzo.

17. FLP's REJUVENATE product line also includes hardwood floor restorers used to fill in scratches, protect and seal hardwood flooring, and restore the finish of the hardwood floors, including wood furniture and floor repair markers and stain remover pens.

18. FLP sells its REJUVENATE products globally, including throughout the United States and Canada, through its product-specific website (https://www.rejuvenateproducts.com/) as well as through major retail and e-commerce outlets, including but not limited to, The Home Depot, Wal-Mart, Ace Hardware, QVC, Bed Bath & Beyond, Menards, and Amazon.com.

**The Parties' Relationship and their Confidentiality Agreement**

19. In 2012, Rust-Oleum approached FLP, in Florida, about a potential acquisition of FLP and its REJUVENATE brand. Representatives from the parties met and began discussions about adding the Rust-Oleum brand on REJUVENATE products.

20. Following these initial discussions, FLP and Rust-Oleum executed a "Reciprocal Confidentiality Agreement" ("the Confidentiality Agreement") on October 16, 2012 that established mutual confidentiality obligations that permitted the parties to exchange confidential

product and business information to enhance discussions about a possible commercial relationship. A true and correct copy of the Confidentiality Agreement is attached as **Exhibit 1** (hereinafter "**Ex. 1**").

21. Under the protections afforded to FLP by the Confidentiality Agreement, Rust-Oleum[3] was able to evaluate FLP's REJUVENATE products, including confidential and proprietary information related thereto, for potentially partnering with FLP and adding the Rust-Oleum brand to FLP's REJUVENATE product labels. **Ex. 1**, § 3.

22. The definition of "Proprietary Information" in the Confidentiality Agreement included information such as "formulas, suppliers, raw materials, product samples, manufacturing processes and processing instructions" along with other technical information and business information such as "cost and price information," "sales, services, business plans, marketing and commercial strategies, techniques, customer identification" and other sensitive information related to the parties' respective businesses. **Ex. 1**, § 1. Moreover, the Confidentiality Agreement protected exchange of Proprietary Information by FLP to Rust-Oleum via "disclos[ure] visually, orally, or in writing." **Ex. 1**, § 2.

23. Regardless of the mechanism of disclosure of the Proprietary Information, the Confidentiality Agreement contained a disclosure period of one year and sets forth an obligation to maintain the confidentiality of any Proprietary Information received from the other party for a period of five years after expiration or termination of the Confidentiality Agreement. **Ex. 1**, §§ 5, 7. Following termination of the Confidentiality Agreement, all confidential information received

---

[3] These confidentiality obligations extended not only to Rust-Oleum, but as to any of its "affiliated companies, successors in business, or assignees of RUST-OLEUM[.]". **Ex. 1**, § 9 (Binding Effects).

was to be returned to the disclosing party. **Ex. 1**, § 6 ("all confidential information submitted hereunder will be returned to the other party within ten (10) days.").

24. Pursuant to and under the mutually understood protections of the Confidentiality Agreement, FLP disclosed Proprietary Information in the form of confidential product information and sales information regarding its REJUVENATE business, including *inter alia* product samples, cost and price information, business plans, marketing and sales strategies, sales information and customer information (amongst other related disclosures).

25. Accordingly, under the Continuing Obligation provision of the Confidentiality Agreement, FLP anticipated that Rust-Oleum would "keep in confidence, and [ ] not use for its own benefit or the benefit of others, any [of the foregoing] proprietary information which ha[d] been or [was] received from [FLP.]." **Ex. 1**, § 7.

## The Parties' License Agreement

26. After consideration of the confidential and proprietary information disclosed by FLP to Rust-Oleum under the Confidentiality Agreement, Rust-Oleum and FLP executed a License Agreement on August 6, 2013. A true and correct copy of that License Agreement is attached as **Exhibit 2** (hereinafter "**Ex. 2**"). Akin to the Confidentiality Agreement, this License Agreement was negotiated and entered into within this Judicial District.

27. FLP and Rust-Oleum entered the License Agreement to further evaluate the potential synergies of their respective brands. Under the License Agreement, FLP could co-brand its REJUVENATE products with Rust-Oleum's trademarks and utilize Rust-Oleum's sales force to expand the market for REJUVENATE products in an area in which, FLP believed, Rust-Oleum

did not and would not independently compete, outside of its JOMAX branded products.[4] *See* https://www.rustoleum.com/product-catalog/consumer-brands/jomax/ (last viewed Dec. 9, 2019).

28. Pursuant to Section 2(a) of the License Agreement, Rust-Oleum granted FLP the right to use the "Rust-Oleum" and "RUST-OLEUM CERTIFIED" trademarks on FLP's "cleaners, renewal products and other related household products" (the "Licensed Products"). **Ex. 2**, § 2(a).

29. Pursuant to Section 2(a) of the License Agreement, Rust-Oleum clearly and unambiguously agreed not to compete, directly or indirectly, with FLP in the manufacture, distribution, promotion, offer for sale, or sale of "cleaning or renewal products or other related household products which compete with the REJUVENATE product line" during the term of the License Agreement and for a period of not less than three years from the expiration of the License Agreement. **Ex. 2**, § 2(a). Section 2(a) specifically carves out Rust-Oleum's existing brand JOMAX from the non-compete provision. **Ex. 2**, § 2(a) (**Exhibit C** to the License Agreement lists the JOMAX products specifically excluded from the non-compete provision).

30. Pursuant to Section 5(b) of the License Agreement, Rust-Oleum agreed to sell the co-branded REJUVENATE products to retail accounts on which its sales force calls at the store level and at the corporate account level, and FLP agreed to provide Rust-Oleum with confidential sales reports as well as specialized sales training and product information to assist Rust-Oleum's sales force with selling the co-branded REJUVENATE products. **Ex. 2**, § 5(b). Accordingly, on November 21, 2013, FLP conducted a specialized sales training on REJUVENATE's products for Rust-Oleum's national sales team at a meeting in Las Vegas.

---

[4] As shown on Rust-Oleum's website, the JOMAX branded products include surface cleaners used to treat exterior surfaces to remove mold, mildew, dirt and grime from aluminum, plastic, concrete, vinyl fiberglass, and wood surfaces.

31. Pursuant to Section 3 of the License Agreement, "the Term of this Agreement shall begin on August 6, 2013 and shall continue through July 31, 2017, or until terminated by either party in accordance with the provisions of this Agreement." **Ex. 2**, § 3.

32. In consideration of the license and the non-compete provision, FLP paid Rust-Oleum a $50,000 upfront royalty and further agreed to pay a three percent (3%) royalty on net sales of any Licensed Products bearing the licensed trademarks. **Ex. 2**, § 4.

33. During the Term of the License Agreement, FLP paid Rust-Oleum a total of $135,304.10 in royalties.

34. The License Agreement expired by its terms on July 31, 2017. On August 2, 2017, Rust-Oleum sent a letter to FLP memorializing the July 31, 2017 expiration of the License Agreement. **Ex. 2**, § 3. A true and correct copy of that letter is attached as **Exhibit 3** (hereinafter "**Ex. 3**").

35. The License Agreement also contained confidentiality provisions that defined "Confidential Information" as technical information, research data and other information made available by one party to the other, including proprietary analytical and research techniques and studies. **Ex. 2**, § 9(e). Section 9(e) of the License Agreement required that "[a]ll Confidential Information shall be maintained in the strictest confidence, and neither party shall use the Confidential Information of the other except for the purposes of this Agreement." *Id.* Under Section 6(c), Rust-Oleum recognized that FLP would "*own all* copyrights, patents, trade dress, and *trade secrets*" in the underlying contemplated products. **Ex. 2**, §6(c) (emphasis added).

36. Section 9(e) of the License Agreement further provided that the "confidentiality obligations shall survive any termination of [the License Agreement]." **Ex. 2**, § 9(e). Thus, at all relevant times, the parties were subject to confidentiality obligations.

37. Pursuant to Section 5(c) of the License Agreement, FLP provided Rust-Oleum product information of its REJUVENATE products. Furthermore, FLP provided confidential product and sales information related to its REJUVENATE business to Rust-Oleum under the Confidentiality Agreement and continued to do so under the License Agreement.

38. Pursuant to Section 12(a) of the License Agreement, "in any litigation between the parties hereto, the costs and attorneys' fees of the prevailing party shall be paid by the other party." **Ex. 2**, § 12(a).

### Rust-Oleum's Breach of the Non-Compete Provision

39. In breach of the non-compete provision in Section 2(a) of the License Agreement (**Ex. 2**), Rust-Oleum was and is promoting and selling cleaning and renewal products that compete with FLP's REJUVENATE product line through the same retailers where FLP sells its REJUVENATE products.

40. For example, these competing cleaning and renewal products include without limitation products sold under Rust-Oleum's VARATHANE brand. *See* https://www.rustoleum.com/product-catalog/consumer-brands/varathane (last viewed Dec. 9, 2019). A side-by-side comparison of examples of FLP's REJUVENATE renewal products (left) versus Rust-Oleum's competing VARATHANE renewal products (right) are shown below:

| | |
|---|---|
|  FLP REJUVENATE Wood Floor Restorer |  VARATHANE Wood Refresher |
|  FLP REJUVENATE Repair Markers |  VARATHANE Repair Markers |

41. In addition, on Rust-Oleum's website, [5] www.rustoleum.com, Rust-Oleum is currently promoting household cleaning and renewal products, in addition to JOMAX, under the brand names VARATHANE, WATCO, MIRACLE SEALANTS, CONCROBIUM, MEAN GREEN, MOLDEX, WIPE NEW, KRUD KUTTER, NANO SHIELD, PARKS PRO FINISHER, WHINK, and RUST-OLEUM. **Exhibit 4** (hereinafter "**Ex. 4**") contains a list of cleaning and

---

[5] *See* https://www.rustoleum.com/pages/audience-brand/homeowner/ (last viewed Dec. 9, 2019).

renewal products, separate and apart from JOMAX, that are promoted for sale under the Rust-Oleum Homeowner Brands section of Rust-Oleum's website, that are distributed by Rust-Oleum and/or its affiliates, and that compete with FLP's REJUVENATE cleaning and renewal products in breach of the non-compete provision of Section 2(a) of the License Agreement.

42. Pursuant to Section 2(a) of the License Agreement, Rust-Oleum's non-compete obligations began on August 6, 2013 and extend for three years after expiration of the License Agreement on July 31, 2017, to July 31, 2020.

43. Despite the express terms of the non-compete provision, Rust-Oleum acquired cleaning and renewal product brands that compete with FLP's REJUVENATE product line both during the Term of the License Agreement (e.g., KRUD KUTTER and WIPE NEW) and within three years after its expiration (e.g., CONCROBIUM, MIRACLE SEALANTS, and MEAN GREEN).

44. Certain cleaning and renewal products (separate and apart from its JOMAX products) promoted for sale on Rust-Oleum's website at www.rustoleum.com/pages/audience-brand/homeowner/, specifically those listed in **Exhibit 4**, can be found for sale in the same retail and e-commerce locations as FLP's REJUVENATE renewal products, including but not limited to The Home Depot, Wal-Mart, Ace Hardware, Menards, and Amazon.com.

45. Pursuant to the protections afforded to FLP by the Confidentiality Agreement and the License Agreement, Rust-Oleum was able to observe and evaluate FLP's confidential and proprietary information related to its REJUVENATE business, including without limitation, sales figures, geographic sale distribution, sales by particular retailers, sales rates, customer identification that demonstrated substantial relationships with specific prospective or existing customers, cost and price information, product samples, and the potential market size.

46. FLP had, and continues to have, legitimate reasons to protect its confidential product and business information related to its REJUVENATE product line. The parties specifically included the confidentiality and non-compete provisions in the License Agreement to protect these interests. FLP relied on the confidentiality and non-compete provisions of the License Agreement to freely share confidential information about its REJUVENATE business without fear of Rust-Oleum utilizing such information, advertently or inadvertently, to usurp FLP's REJUVENATE market.

47. In blatant disregard for the non-compete provision in Section 2(a) of the License Agreement, Rust-Oleum is directly or indirectly manufacturing, distributing and selling nearly identical cleaning and renewal products (separate and apart from JOMAX), and other related household products in competition with FLP's REJUVENATE products. *See* **Ex. 4**.

48. Rust-Oleum has failed to comply with the clear and unambiguous restrictions of the non-compete provision of the License Agreement. Rust-Oleum has been selling cleaning and renewal products (*see* **Ex. 4**), other than JOMAX products specifically identified in **Exhibit C** of the License Agreement (**Ex. 2**), that compete with FLP's REJUVENATE product line since at least 2013, including the aforementioned VARATHANE renewal products. *See also* https://www.rustoleum.com/product-catalog/consumer-brands/varathane/ (last viewed Dec. 9, 2019).

49. FLP's desire to protect its confidential information coupled with its legitimate concern that Rust-Oleum would undermine FLP and unfairly compete in REJUVENATE's market (which Rust-Oleum has actually done) demonstrate that the non-compete provision covered a legitimate business interest and covered a reasonable scope.

50. Rust-Oleum's brazen contravention of the express terms of the non-compete provision of the License Agreement demonstrates a breach of its implied duty of good faith and fair dealing.

51. Given Rust-Oleum's access to FLP's confidential product and sales information regarding its REJUVENATE business and Rust-Oleum's concurrent and subsequent manufacture, distribution and sale of cleaning and renewal products that directly compete with FLP's REJUVENATE product line, Rust-Oleum has acted in bad faith and willfully breached the License Agreement. Consequently, not only has FLP lost sales and market share due to Rust-Oleum's unauthorized sale of competing products, but FLP has also been irreparably harmed as FLP may not ever be able to effectively compete in the relevant market in the same manner as it would have if not for Rust-Oleum's breach of the non-compete provision of the License Agreement. Such irreparable harm has resulted directly from FLP's disclosure of its confidential and proprietary product and business information provided to Rust-Oleum under the Confidentiality Agreement and the License Agreement.

## COUNT I
## BREACH OF CONTRACT

52. FLP re-alleges and incorporates by reference paragraphs one (1) through fifty-one (51) as if fully set forth herein.

53. Section 2(a) of the License Agreement (**Ex. 2**) prohibited Rust-Oleum from competing with FLP "in the business of manufacturing, distributing, or [selling] cleaning or renewal products and other related household products which compete with the Rejuvenate product line" during the term of the License Agreement and for three years after expiration thereof.

54. Despite this express and unambiguous prohibition, Rust-Oleum is competing with FLP's REJUVENATE product line by directly or indirectly distributing cleaning and renewal

products, other than JOMAX, along with other related household products, through the same retail and distribution channels, including the same retailers, as FLP. *See* **Ex. 4**.

55. The License Agreement expired by its terms and by written acknowledgement of the parties on July 31, 2017, but, pursuant to Section 2(a) of the License Agreement, Rust-Oleum's non-compete obligations extend to July 31, 2020.

56. Rust-Oleum's promotion for sale and direct or indirect distribution of cleaning and renewal products under the brand names VARATHANE, WATCO, MIRACLE SEALANTS, CONCROBIUM, MEAN GREEN, MOLDEX, WIPE NEW, KRUD KUTTER, NANO SHIELD, PARKS PRO FINISHER, WHINK, and RUST-OLEUM, including at least those products referenced in **Exhibit 4**, constitutes a breach of the non-compete provision set forth in Section 2(a) of the License Agreement.

57. On information and belief, Rust-Oleum has been distributing cleaning and renewal products, other than JOMAX, in direct competition with FLP's REJUVENATE product line throughout the term of the License Agreement, including acquiring cleaning and renewal product brands (e.g., KRUD KUTTER and WIPE NEW) during the Term of the License Agreement. Consequently, FLP has never received the full benefits of the License Agreement, including the benefit of not having to compete with Rust-Oleum, who had access to FLP's confidential and proprietary product and business information, in exchange for its royalty payments totaling $135,304.10.

58. FLP is owed at least $135,304.10 in damages plus lost profits resulting from lost sales as a result of Rust-Oleum's breach as well as all costs and fees associated herewith.

59. Further, because Rust-Oleum has had access to FLP's confidential information related to FLP's REJUVENATE products and business, FLP has been and will continue to be

irreparably harmed by Rust-Oleum's unfair competition in breach of the non-compete provisions of the License Agreement. Accordingly, FLP seeks a preliminary (and later a permanent) injunction to enforce the terms of the non-compete provision of the License Agreement and obtain the full benefit thereof.

60. In view of Rust-Oleum's willingness to blatantly disregard and brazenly breach the non-compete provision of the License Agreement, FLP has and will continue to suffer irreparable harm as a result of the added challenge of attempting to recoup market share for which Rust-Oleum should not have possessed. Accordingly, FLP requests that Rust-Oleum be preliminarily (and later permanently) enjoined from directly or indirectly manufacturing or distributing cleaning or renewal products, other than JOMAX, that compete with FLP's REJUVENATE product line for a period of seven (7) years as bargained for in the License Agreement.

61. FLP has and continues to be harmed by Rust-Oleum's breach of the License Agreement.

**COUNT II**
**BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

62. FLP re-alleges and incorporates by reference paragraphs one (1) through fifty-one (51) as if fully set forth herein.

63. Not only did Rust-Oleum breach the express non-compete provision of the License Agreement (**Ex. 2**, § 2), it also breached its implied duty of good faith and fair dealing.

64. Rust-Oleum did so by (a) evaluating FLP's confidential and proprietary information related to its REJUVENATE products, market, customers, distribution channels, and sales, and then (b) acquiring, marketing, selling, and distributing cleaning and renewal products that directly compete with FLP's REJUVENATE product line through the same distribution channels.

65. Rust-Oleum never intended to comply with its non-compete obligations. Rust-Oleum was directly or indirectly distributing cleaning and renewal products, other than JOMAX, in competition with FLP's REJUVENATE product line throughout the term of the License Agreement. Rust-Oleum acquired additional cleaning and renewal product brands in direct competition with FLP's REJUVENATE product line during the term of the License Agreement in blatant disregard of the non-compete provision therein. And Rust-Oleum continues to distribute cleaning and renewal products in competition with FLP's REJUVENATE products after expiration of the License Agreement in blatant disregard of the non-compete provision that extends three years after expiration License Agreement. As such, Rust-Oleum has acted in bad faith at all relevant times.

66. These bad faith tactics have caused significant, irreparable harm to FLP, for which it seeks injunctive relief and damages.

## REQUEST FOR RELIEF

WHEREFORE, FLP respectfully requests that this Court enter judgment in its favor and against Rust-Oleum as follows:

1. Rust-Oleum be held liable under each claim of relief set forth against it in this Complaint;

2. Rust-Oleum be required to pay FLP monetary damages suffered as a result of the breach of the License Agreement and the implied duty of good faith and fair dealing, including amount of royalties FLP paid to Rust-Oleum as well as lost profits for lost sales resulting from Rust-Oleum's breach of the License Agreement.

3. Preliminary and later permanent injunctive relief to enforce the non-compete provision of the License Agreement through at least July 31, 2020;

      4.      Preliminary and later permanent injunctive relief to enjoin Rust-Oleum from manufacturing, distributing or selling cleaning or renewal products that compete with the REJUVENATE product line for a period of seven (7) years from the date of injunction to make FLP whole;

      5.      Award FLP attorneys' fees and costs as set forth in the License Agreement (**Ex. 2**, § 12(a)) and otherwise as this Court determines; and

      6.      Grant such other and further relief as the Court determines to be just and proper.

Dated: December 16, 2019 Respectfully submitted,

*/s/ Robert H. Thornburg*
Robert H. Thornburg
Florida Bar No. 630829
E-Mail: rthornburg@allendyer.com
Stephanie Vazquez
Florida Bar No. 1011124
E-Mail: svazquez@allendyer.com
**Allen, Dyer, Doppelt + Gilchrist, PA**
1221 Brickell Ave., Suite 2400
Miami, FL 33131
Tel: 305-374-8303
Fax: 305-374-8306

Terry L. Clark
Email: tclark@bassberry.com
(*pro hac* admission request forthcoming)
Matthew D. Zapadka
Email: matt.zapadka@bassberry.com
(*pro hac* admission request forthcoming)
**Bass, Berry & Sims, PLC**
1201 Pennsylvania Avenue NW, Suite 300
Washington, DC 20004
Tel: 202-827-2950
Fax: 202-478-0400

R. Gregory Parker
Email: gparker@bassberry.com
(*pro hac* admission request forthcoming)
**Bass, Berry & Sims, PLC**
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Tel: 615-742-6200
Fax: 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

*Counsel for For Life Products, LLC*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

|   |   |
|---|---|
| FOR LIFE PRODUCTS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) Civil Action No._____ | |
| v. ) | |
| ) | |
| RUST-OLEUM CORPORATION, ) | |
| ) | |
| Defendant. ) | |

**VERIFICATION OF COMPLAINT**

I, **JOSEPH A. MCDONNELL**, declare as follows:

1. I am over the age of 18 and I am the Chief Executive Officer of For Life Products LLC ("FLP"). I am also the former President of FPI. I am authorized to make this Verification on behalf of FLP.

2. I have reviewed FLP's files and records and have personal knowledge of the facts contained in the foregoing Verified Complaint.

3. I have reviewed the factual statements made in the foregoing Verified Complaint, and they are true and correct to the best of my knowledge, information and belief.

4. To the best of my knowledge, information and belief, **Exhibit 1** to the Verified Complaint is a true and correct copy of the Confidentiality Agreement, as described in the Verified Complaint, which is maintained in FLP's records in the ordinary course of business.

5. To the best of my knowledge, information and belief, **Exhibit 2** to the Verified Complaint is a true and correct copy of the License Agreement, as described in the Verified Complaint, which is maintained in FLP's records in the ordinary course of business.

6. To the best of my knowledge, information and belief, **Exhibit 3** to the Verified Complaint is a true and correct copy of the August 2, 2017, letter confirming nonrenewal of the License Agreement, as described in the Verified Complaint, which is maintained in FLP's records in the ordinary course of business.

7. To the best of my knowledge, information and belief, **Exhibit 4** to the Verified Complaint is a compilation of cleaning and renewal products promoted for sale by Rust-Oleum under the

Homeowner Brands section of its website, www.rustoleum.com, as described in the Verified Complaint.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed on December 16, 2019.

_____
Joseph A. McDonnell
Managing Member & CEO
FOR LIFE PRODUCTS, LLC